UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA        :
                                :
                                :
V.                              :   CRIMINAL NO.  3:10CR68(JCH)
                                :
KENNETH ZRALLACK, et. al.       :
                                :
                                :

RULING ON DEFENDANT'S MOTION FOR PRETRIAL RELEASE

Defendant Kenneth Zrallack moves for pretrial release while his prosecution for conspiracy to sell/transfer firearms and explosive devices is pending. Zrallack is one of five defendants named in a seven count indictment, alleging that members of a "self-described white supremacist group known as the Connecticut White Wolves, later known as Battalion 14" and their associates attempted to transfer firearms and explosive grenades to a white supremacist group located outside Connecticut. Zrallack is identified by the grand jury as the leader of the Connecticut White Wolves.

In Count 4 of the indictment, the only offense  pending against Zrallack, the grand jury charges that four of the defendants, including Zrallack, conspired to make, sell and transfer firearms, specifically rifles and shotguns, to Witness A, knowing that Witness A was a convicted felon, a violation of 18 U.S.C. § 922(d)(1), and to make and transfer firearms, specifically explosive grenades, to Witness A in violation of the National Firearms Act.,  26 U.S.C. § 5861(e) and (f).   Zrallack is alleged to have accepted a portion of the cash payment for the firearms and grenades sold by the conspirators to Witness A.  If convicted, Zralleck faces a  maximum penalty of  five years imprisonment, a $250,000 fine, 3 years of supervised release, and the $100

1

mandatory special assessment.  The government also seeks to forfeit the firearms and grenades.

The U.S. Attorney moved for pretrial detention, alleging that, under 18 U.S.C. Section 3142(f)(1)(a), the charged offense was a crime of violence, and that there were no conditions of release that would reasonably assure the safety of any other person or the community.  The defendant countered with a Motion for Pretrial Release.  The U.S. Attorney subsequently raised as a potential threat the defendant's post-presentment statement about the identity of the witnesses. The pending motions are not governed by a rebuttable presumption.  The pretrial services report recommends detention.    Since his arrest on March 20, 2010, defendant has been in custody.


LEGAL DISCUSSION

The United States sought defendant's detention on the grounds that he (1) is charged with a "crime of violence" within the meaning of 18 U.S.C. § 3156; and (2) presents a serious risk that he will obstruct or attempt to obstruct justice or threaten or attempt to threaten prospective witnesses or jurors.

A.  Crime of Violence

The United States first asserts that this case involves a "crime of violence" as defined by the Bail Reform Act of 1984 ("Bail Reform Act"), 18 U.S.C. § 3156(a)(4)(B).   Section 3156(a)(4)(B) defines a "crime of violence" as "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or porperty of another may be used in the course of committing the offense."  Actual use of physical force against another is not an essential element of a "crime of violence" under this section, as evidenced by

2

the use of the conditional term "may."  18 U.S.C. § 3156(a)(4)(B).  Rather, the inquiry must

focus on whether the alleged crime presented a "substantial risk" of use of force during its

pendency.  United States v. Dodge,  846 F. Supp 181 (D. Conn. 1994).   Under the Bail Reform

Act,  any conspiracy to commit a crime of violence is deemed a crime of violence.  United States

v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).

 Defendant is alleged to have conspired to transfer firearms to a convicted felon and to

make and transfer explosive grenades in violation of the National Firearms Act.

 In this Circuit, possession of a firearm by a convicted felon is a crime of violence for

purposes of the Bail Reform Act. United States v. Dillard, 214 F. 3d 88 (2d Cir. 2000).  Title 18

U.S.C. Section 922(d)(1) makes it a crime "for any person to sell or otherwise dispose of any

firearm or ammunition to any person knowing or having reason to know that such person –

(1)...has been convicted in any court of a crime punishable by imprisonment for a term exceeding

one year." For the reasons set out in Dillard, including Congress' finding that convicted felons

are persons "who pose serious risks of ...danger to the community," Dillard at 95,  a conspiracy

to sell or dispose of firearms to a convicted felon also qualifies as a crime of violence under the

Bail Reform Act.

 Defendant relies on United States v. Carter, 996 F. Supp. 260 (W.D.N.Y. 1998),  for the

proposition that the unlawful  transfer of firearms does not constitute a crime of violence under

the Bail Reform Act.  However, writing before Dillard was decided,  Judge Feldman in Carter

distinguished cases charging a violation of Section 922(a)(1), which requires a license to deal in

firarms or ship them in interstate commerce,  from felon-in-possession charges. A violation of

Section 922(d)(1) more closely mirrors  the dangers underlying the Court of Appeals' finding

that Section 922(g)(1), the felon in possession statute, is a crime of violence than does the

licensing statute, Section 922(a)(1), with  which Judge Feldman was dealing.

Defendant is also charged with conspiring to make and transfer explosive devices, which

present an even greater risk of detonation in their transfer than  firearms, in violation of Title 26,

United States Codes, Sections 5861(f) and (e). The mere possession of an unregistered weapon in

violation of 26 U.S.C. § 5861 has been deemed a crime of violence under the Bail Reform Act.

See United States v. Aiken, 775 F. Supp 855, 857 (D. Md. 1991).  It logically follows that the

making, or the transfer to others, of unregistered weapons under that same statute involves at

least as great a risk of physical force as the mere possession of such weapons.  See United States

v. Jay, 2004 WL 744410, *2 (M.D. Fla Apr. 8, 2004)(manufacture or possession of unregistered

explosive/destructive device in violation of 26 U.S.C. § 5861(d) or (f) are crimes of violence

under the Bail Reform Act).

Grenades are inherently dangerous weapons for which no peaceful purpose can be

seriously suggested, regardless of whether the weapons are actually used.  See Dodge, 846 F.

Supp at 184.  As the possession of a grenade is a continuing offense, the risk of harm remained

present throughout its alleged commission.  Id.; See also United States v. Ballentine, 4 F.3d 504,

507 (7th Cir. 1993)(holding unlawful possession of firearm to be a continuing offense); United

States v. Dunn, 935 F.2d 1053, 1059 (9th Cir. 1991)(holding, under Sentencing Guidelines, that

"possession of an unregistered firearm is presumptive evidence of unlawful violent intentions

and, therefore, involves the substantial risk of violence necessary to label the possession a crime

of violence.")

4

The United States alleges that defendant conspired to make explosives.  Making an explosive inherently involves an extended period of time, during which the maker must possess and work with explosive materials.  See United States v. Kruszewski, 1991 WL 268684, *2 (N.D. Ind. Dec. 10, 1991)(defendant's alleged manufacture of unregistered destructive devices would indeed constitute a 'crime of violence' under the Bail Reform Act).  Moreover, the act of making an explosive necessarily contemplates a victim.  United States v. Drapeau, 188 F.3d 987, 990 (8th Cir. 1999)(felony offenses that involve explosives qualify as "violent crimes" for purposes of enhancing the sentences of career offenders.)

The risk of harm to others from the conspiracy to transfer these devices was obvious in this case, given that, according to the government's proffer,  the intended users for these weapons were a white supremacist group outside Connecticut.

B.  Witnesses at Risk

The United States next contends that pretrial detention is warranted  pursuant to 18 U.S.C. § 3142(f)(2)(B).  To order detention on this ground, the Court must find that a serious risk exists that defendant will, or will attempt to, obstruct justice or threaten or injure prospective witnesses or jurors.  See 18 U.S.C. § 3142(f)(2)(B).  To obtain detention on this ground, the government must sustain its burden of proof by clear and convincing evidence.  United States v. Rodriguez, 950 F.2d 85, 88-89 (2d Cir. 1991).  In support, the government proffers that a United States Probation Officer was present on March 22 when Zrallack, after his initial appearance, walked into the attorney interview room and declared, "This is so f-cked up, I need to know who those witnesses are."

While defendant's counsel argues that Zrallack was merely expressing an interest in

5

learning about the evidence to be presented against him, defendant's statement raises serious concerns about witness safety and potential witness intimidation.

DEFENDANT'S PROPOSED BAIL PACKAGE

The Court must consider whether the conditions of release proposed by defendant, or other conditions of release, can provide reasonable assurance that, if released, Mr. Zrallack will not endanger the community or the witnesses.

Mr. Zrallack proposes that he reside with his father, and that the father act as a third party custodian. Counsel proposes to address any danger to the community by limiting the defendant's contact with others by prohibiting cell phone usage and requiring defendant to report to probation on a daily basis. The proposal also includes electronic monitoring, home confinement with a 9 p.m. to 7 a.m. curfew, and restrictions on phone calls.

Under Section 3142, the Court begins with information about the defendant. He reported to the probation officer that he was born in Bridgeport in 1981 and has lived in Connecticut his entire life. He has never traveled outside the U.S. He is a high school graduate. For the past five years, he has rented a basement apartment in Ansonia, sharing it with a roommate for the past three years. His last verifiable (on the books) employment was at a Dominos Pizza in 2005; since then, he reports that he has worked in the construction/contracting business.

Mr. Zrallack's immediate family includes his father, who resides in Stratford with the defendant's younger brother, Matthew, and a sister in Shelton, with whom he has no contact. While willing to allow the defendant to reside in his home, Mr. Zrallack's father will not co-sign a bond or post his property to secure his son's release. Mr. Zrallack is not in contact with his

mother. A 19-year-old female friend, who was with him at the time of his arrest,  is willing to co-sign a nonsurety bond but she also works off the books and can provide no financial surety.

The defendant's prior criminal record consists of three misdemeanors in 1998 and 1999, all of which were disposed of in September 2000 by suspended sentences and a two year period of probation. They included criminal mischief 3d, assault 3d, and reckless endangerment, 1st degree. His affiliation with the white supremacist group, the White Wolves, goes back to its founding in 2002, according to a 2004 posting on the website, www.adl.org, which indicates that the Zrallack brothers set up a White Wolves website and internet message board called "The White Order" to attract new recruits. Matthew Zrallack was convicted and sentenced to six months in prison with three years probation for assaulting a plain clothes police officer during a White Wolves confrontation with a lesbian and gay rights group at the Stratford Public Library.

At the detention hearing, the assistant U.S. attorney proffered a recording of a conversation in which Zrallack is alleged to have said, "I'm ready to step up to the next level...I'm ready to step it up man, I'm ready to F-cking go to the next level...I'm gettin tired of flyer drops, I'm gettin tired of talkers, man, and...Better do a lone wolf, f-ckin f-ck the world up...Yeah, get drunk, and then alco-holocaust, baby!"

As noted above, the cooperating witness referenced in the indictment told Zrallack and the other conspirators that the guns and grenades were going to another white supremacist group. Any reasonable person would conclude that the these weapons were to be used to intimidate or harm members of the public.  The nature of this crime, combined with the defendant's statements that he was tired of advocacy and ready to move to the next level, establishes by clear and convincing evidence that the defendant poses a danger to the community.

This dangerousness is not adequately addressed by the proposed bail package. There is no evidence from which the court can conclude that the defendant's father, acting as custodian, could or would curb the defendant's escalation to violence. Mr. Zrallack, the father, has a full time job, so he would not be in a position to closely supervise the defendant. Moreover, the defendant would be residing with his brother, who has participated in White Wolves activities which resulted in violence in the past.  No proposed co-signer of the bond or other surety would have anything tangible to lose if the defendant failed to abide by his conditions of release. And monitoring the defendant's telephone access and contacts is an impossible job.  Having the defendant remain at his father's home all day, essentially unsupervised, would not necessarily inhibit the defendant from contacting other conspirators or like-minded individuals to arrange acts of violence against prospective witnesses or others with whom he takes issue because of their race, gender, religion or sexual orientation. Indeed, based on the strength of the government's case and the likelihood that the defendant will be convicted and incarcerated, releasing the defendant to home confinement is likely to provide his last chance for awhile to act on the beliefs which have apparently fueled his involvement in this organization for most of his adult life.

CONCLUSION

For the reasons stated above, the Court finds that conspiracy to sell and transfer firearms to a convicted felon in violation of 18 U.S.C. § 922(d)(1) and to make and transfer firearms (explosive devices)  in violation of the National Firearms Act, 26 U.S.C. § 5861(e) and (f), are "crimes of violence" under 18 U.S.C. § 3156(a)(4)(B) and the defendant poses a risk of danger to

8

prospective witnesses, jurors or the community under 18 U.S.C. § 3142(f)(2)(B).

Having reviewed the defendant's proposed bail package, and available alternatives, the Court finds that there are no conditions of release that could reasonably assure the safety of the community and prospective witnesses. Defendant's Motion for Court Ruling [doc. #82]  is GRANTED. For the reasons stated above, defendant's motion for pretrial release [Doc. # 18] is DENIED, and the U.S. Attorney's Motion for Pretrial Detention [Doc. # 43]  is GRANTED.

SO ORDERED at Bridgeport this 2nd day of July 2010.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

9